Good morning ladies and gentlemen. Our first case of the morning is case number 117, 170 Kevin McElwain v. Office of the Secretary of State. Are you ready to proceed? I am. Since you're at the podium, I assume you're ready to go. I'm ready to go. All right, proceed. Thank you, Your Honors, and may it please the Court. I'm Illinois Assistant Attorney General Clifford Berlow, and I'm here on behalf of the appellant in this case, the Office of the Illinois Secretary of State. The doctrine of unconstitutional conditions recognizes a basic dichotomy with respect to individually held constitutional rights. On the one hand, the government is not permitted to tie to a valuable government benefit an onerous condition that is designed to compel people to surrender their constitutional protections. On the other hand, the government is allowed to offer non-coercive incentives that are designed to encourage people to voluntarily waive one of their constitutional rights. This case is about that dichotomy, and it is not about the issue that the Circuit Court focused on in its decision. The fundamental question presented here is whether the suspension of the plaintiff's driver's license in this case, based upon an Illinois statute that agreement to allow a chemical test to occur if they are involved in a serious or, as in this case, a fatal accident and arrested for a moving violation related to that accident, whether that condition operates as an onerous condition or a permissible incentive. The question presented here is not the one focused on by the Circuit Court, which was whether or not, if a search had been conducted that was involuntary and warrantless, whether the special needs exception to the warrant requirement of the Fourth Amendment would have allowed it to go forward. That is a critical and perhaps the most critical distinction to be drawn in this case. And the reason it's so important is that the special needs exception to the warrant requirement and the doctrine of unconstitutional conditions are not coextensive. The special needs exception is fundamentally a rule of the criminal law. And this doctrine of unconstitutional conditions is almost exclusively, I think, if not exclusively, a rule of civil law. The two tests differ in fundamental respects. And the two, and so I want to be as clear as possible why this case is not a pure special needs case, as the Circuit Court found. And I think that really comes from two different sources. First, if you look at the way the statute here operates, I think what you'll see immediately is that it doesn't authorize involuntary warrantless searches. Indeed, the plaintiff here was not subjected to an involuntary warrantless search. The Fourth Amendment is not violated by hypothetical searches that never took place. The Fourth Amendment is violated by a search that is voluntary. What the statute authorizes are consent searches. And consent searches, I think as this Court is well aware, are perfectly permissible as a matter of Fourth Amendment law. Now, what the statute does is it attaches a consequence for not giving over your consent to search. But it's that consequence that it brings this case within the ambit of the doctrine of unconstitutional conditions. And so I think that, and that really brings me to the second point here, which is that the U.S. Supreme Court precedent in this area is very clear that the test for violations of specific constitutional rights is not the same test that applies to unconstitutional conditions cases. If you take Reagan against taxation with representation of Washington, for example, the Court there considered a law that Congress had passed giving a special tax exemption to not-for-profits that promised that they would not exercise their core First Amendment right to lobby the government. However, not-for-profits that did choose to lobby the government weren't eligible for those tax benefits. And the Court, I think, proceeded from the premise that Congress could not directly ban not-for-profits from lobbying the government. Nevertheless, the Court upheld the incentive because it operated as an incentive. It encouraged a statutorily preferred mode of conduct. And Reagan is not unique in this regard. Rust against Sullivan held that Congress could condition participation by health care providers in a government-subsidized family planning program on their promise not to identify abortion as a permissible means of family planning. Harris v. McCrae said that you can condition participation in the Medicaid program on the promise that you will not have an abortion, which would be a protected 14th Amendment conduct. And most recently in the American Library Association case, the Supreme Court upheld a condition that was placed upon a library would install Internet blocking software that would screen out First Amendment speech. So if the plaintiff is right and the implied consent statute that is at issue here can only be applied where the Fourth Amendment would allow a warrantless involuntary search, then all of those cases have to be wrongly decided. Because each of those cases stands for the proposition that the government can, in some circumstances, can in some circumstances burden a constitutional protection through an incentive program. Mr. Burlow, let's talk about the circumstances in this case. I don't know any other way to do it, but to read three segments of the Fink v. Ryan case, in which really, to be honest, it wasn't greatly discussed in the brief. So let me read these three portions. No reasonable driver expects to leave the scene of a serious accident moments after its occurrence. With law enforcement personnel investigating the accident and other personnel attending and the participant's physical conditions, a driver expects less privacy. Any driver subject to chemical testing under the amended statute has a statutory duty to render aid to injured parties and exchange basic information with those involved. Given that amount of time required to attend to law enforcement and emergency medical needs, the addition of a chemical test is minimally intrusive. And the last phrase, the intrusion upon an arrested driver is minimal or non-existent depending upon the length of time required by law enforcement personnel to process the accident scene and emergency medical personnel to attend the injured parties. Don't these passages clearly show that this court upheld the statute only because of the diminished expectation of privacy that drivers have at accident scenes? And don't these passages show that either, one, a time limit must be read into the statute to preserve its constitutionality, or two, the statute is unconstitutional as applied when testing is not sought shortly after the accident. Well, Justice Thomas, let me begin with the basic observation which ties back to what the point I was just trying to make, which is that the court there was applying the test for the special needs exception to the warrant requirement under the Fourth Amendment. It was not applying the unconstitutional conditions analysis that this case really raises. And the reason it didn't is if you go and look at the Coons decision from the United States Supreme Court from two terms ago, what it said is that the question of whether or not the government is trying to incentivize conduct it could not compel is the threshold question to an unconstitutional conditions analysis. And so in think the court upheld the statute because at the threshold step, the question of whether the government was trying to incentivize conduct it couldn't compel, it found there that the government wasn't trying to do, that it was incentivizing conduct, it could compel. So it had no need to reach the unconstitutional conditions analysis. So I don't think think here really provides us much guidance as to the unconstitutional conditions question. Now, as to the statute itself, I think the lack of a time limit that appears on the face of the statute, it seems to me that that really indicates that what the General Assembly wanted here is for that statute to reach to its constitutional maximum as opposed to trying to then read in some other time limit that would somehow come short of the time limit that would be allowed under the Constitution. So while you're certainly right, the question of whether we could perform an involuntary warrantless search against someone's will would not have justified the search under these conditions. I don't think there's any doubt now under Missouri against McNeely from the Supreme Court several terms ago that we couldn't do that. But that's not the test. The test between the Fourth Amendment and the unconstitutional conditions doctrine are not one and the same. And I think if you look at the Dolan case, which is still the leading authority on what the test is for cases arising under the doctrine of unconstitutional conditions, you'll see that that test differs in fundamental respects. There are two requirements under Dolan. The first is that there is an essential nexus between the condition opposed and a legitimate government interest. And then the second question is whether the burden on the individual's constitutional rights is roughly proportional to the importance of the governmental interest. Now, as to the first point, I don't think there's any dispute in this case that we meet that standard here. The importance of the government interest in the context of implied consent laws is well recognized. Indeed, both this court and the United States Supreme Court have both said it is not only a legitimate government interest to protect the public from intoxicated drivers. It is, in fact, a compelling state interest if you're applying strict scrutiny. As far as the nexus, I think the importance of what the Supreme Court is getting at when it says there needs to be a nexus here is that the nature of the government's ability to limit the exercise of a constitutional right is itself limited by the nature of the governmental interest. And so, for example, I don't think we – I mean, I can tell you, we would concede that if the government tried to tie to the availability of a driver's license a condition that you not criticize the government, that wouldn't pass constitutional muster because government criticism impairs no legitimate governmental interest. It's not the case here. The reason that Illinois insists on a partial waiver of Fourth Amendment protection when you use its roadways is that it is trying to eliminate as many barriers as possible to protecting the public from intoxicated drivers and the hazards that they present to the public. Now – Well, what exactly is the nexus between that interest and requiring consent to chemical testing remote in time from when the driver was involved in a traffic accident? Well, Justice Thomas, I think that your question in many respects goes more to the second issue, which is the question of proportionality. And there, I think it's important to bear in mind that what we're measuring is the degree of intrusion under the Fourth Amendment versus the importance of the governmental interest. And, again, we have a compelling interest here for good reason on the one side of the ledger. The reason it's so compelling is that if you look, like clockwork for the last several years, Illinois has had nearly a thousand fatalities on the road as a result of car accidents every year. A large percentage of them are the result of intoxicated driving. If you measure it in purely economic terms, it costs tens of billions of dollars a year nationwide as a result of intoxicated driving. On the other side of the equation, we have to look at the specific facts of this case and determine how great an intrusion this search would actually be from a Fourth Amendment perspective. And our view is that it would be, at best, a modest impingement into the Fourth Amendment, even though it is remote in time. And I think the reason for that is twofold. First, if you look at the nature of what went on here, this was in the context of an arrest. And there is a longstanding body of case law that says when you're under arrest, you have a diminished expectation of privacy. That arrest, if you look at it in context, I would think would even further diminish the expectation of privacy that was at issue here. This occurred at a police station, following an interview, during which an individual confessed to having used marijuana in the past and after being confronted with a baggie that included trace amounts of cannabis. I know there's some factual dispute as to whether or not that was actually tested and shown to be cannabis. We think the administrative agency found that there was marijuana in the baggie, and there's no evidence in the record to show that that was against the manifest way. But he was confronted with this baggie and then asked to perform a chemical test two days later, where there's really no doubt that if he had been on marijuana at the time of the accident, this test would have shown that he was intoxicated at the time, or could have shown. We might need additional corroborating evidence, but it certainly would have been relevant evidence to making that shown. Mr. Berlow, how reliable would that be, though? I mean, what if he took it after the accident? It would be in his system as well. So who has the burden? Does the state have the burden of showing that the request was made at a time that would yield some reliability of the information? Well, Justice Burke, I think the answer to that is twofold. One is a factual answer, and one is a legal answer. Let me start with the factual answer. The plaintiff denied during his interview that he had used marijuana after the accident. So he specifically told them, I haven't used it since the accident. He actually said, I hadn't used it since before. Now, if the evidence is actually obtained and he consents to the search, he would still certainly have the ability at a criminal trial to argue that this evidence wasn't persuasive enough to a jury to support a conviction beyond a reasonable doubt. Indeed, I likely agree that if this was the only piece of evidence at the state's disposal to try and convict him of driving under the influence, it probably wouldn't meet the beyond a reasonable doubt standard. But I don't think it's enough for him to say, I don't think the test here can be, well, you couldn't convict me of it, therefore the condition is improperly applied to me. That seems to me to be too onerous a standard for the application of what is a straightforward requirement that every driver on the road is familiar with. Indeed, certainly the plaintiff was, as this was the second time that he had refused a chemical test in the course of being pulled over. So it's not as though this is really just an implied consent statute that he was completely unaware of. This is a person who was very much aware of what the requirement, what the rule is here. Again, I don't think you can simply say that the test was disproportionate to the government's interest based upon the fact that this evidence alone wouldn't allow for a conviction. But the vehicle code provides, doesn't it provide that if you flee the scene of an accident, there's a 12-hour limit on requesting the blood test, urine, or breath test. Why is it that, why should there be a difference if somebody flees the scene, why should they have more of a limited window than somebody that was cooperative and was released? What's the justification? Chief Justice Garmon, because there's a fundamental difference between that statute and the statute that's at issue here, and it has to do with the consequences of not allowing the search to go forward. Under that statute, the refusal to allow the search is a Class 4 or Class 2 felony. It is what is in this body of law referred to as irrevocable complied consent. And those statutes have faced much greater constitutional scrutiny because the individual loses their ordinary right under a consent search paradigm to withdraw their consent. Here, under this statute, the consequence is the loss of your driver's license. It is a regulatory consequence. And the question fundamentally is whether or not this regulatory consequence is so onerous that it essentially dwarfs, that its impact on a constitutional right essentially dwarfs the nature of the governmental interest here. The requirement of consenting to search and the consequences of failing to consent are all part of the same statute. You'd agree with that? Yes, certainly, Justice Thomas. So how can we separate? Doesn't it matter whether or not the test the driver refuses to take is one that violates the Fourth Amendment? Justice Thomas, I'm not taking the position that the Fourth Amendment is irrelevant here. I think it comes into play at two different points in the analysis. The first point is the one that I discussed with you earlier, which is the Kuntz test, which is you examine whether or not the government is trying to incentivize conduct it can't compel. If the answer is yes, then you go into the constitutional conditions analysis. So I think the Fourth Amendment is at play there. The second point is at the factor that I think we're discussing from Dolan, which is the rough proportionality part of the test. And the question there is the degree of the Fourth Amendment impingement and then in comparison to the government's interest. We aren't taking the position that the Fourth Amendment has nothing to say about this. I think we certainly concede that it does. The only thing we're saying is that it is not the entirety of the analysis, and that is the critical distinction that we think needs to be drawn in this case, and it's the fundamental reason why the circuit court's analysis here is fundamentally flawed, because the circuit court treated the Fourth Amendment and the unconstitutional conditions doctrine as though they are coextensive. And I think as we've established regarding Reagan, Rust, Harris, American Library Association, and Coombs, five U.S. Supreme Court cases that span nearly 40 years of precedent, that's not correct. So it seems to me that you have to identify that there is some sort of gap where the government is allowed to incentivize conduct it cannot compel. Otherwise, those cases simply do not make any sense. Ultimately, I think it's important to bear in mind that this is a statute that is designed to protect public safety. I don't think we dispute for a moment that if what had been discovered in the glove compartment of the plaintiff's vehicle here was a bottle of whiskey as opposed to a baggie with marijuana, where his body would have metabolized material by the time that he was under arrest, that this would not be a reasonable condition. It would not be related to the government's interest. However, here we have marijuana. Here we know the test would reveal something that would be pertinent to a criminal charge. And as a result, we think it is a reasonable condition to impose upon his driver's license that he accede to a chemical test. Thank you. Good morning, Your Honors. Good morning. My name is Stephen Shebar. I am the attorney for the appellee, Mr. Kevin McElwain. May it please the court. Illinois' implied consent statutory scheme, in our case, I'm referring to this as the non-DUI consent statute. That's 635.511.501.6. This statutory scheme is constitutional if it's applied reasonably. Reasonableness in the Fourth Amendment context obviously doesn't mean that an Illinois driver always has a constitutional right to refuse a chemical test of bodily fluids without fear of losing his or her license. But there are clearly some circumstances where the scheme cannot be imposed. This court has told us when testing may be imposed under the threat of suspension in Fink v. Ryan. However, in the present case, as the circuit court found, the state violated Mr. McElwain's constitutional rights by punishing him for refusing a search of his bodily fluids under circumstances that were completely divorced from any exigency, any special need, any diminished expectation of privacy, and under circumstances where the state had two days during a basically inactive investigation to obtain a warrant for the test but inexplicably failed to do so. This court has told us that it is, quote, while driving on the road that one reasonably expects less privacy. And the court has explained why this is especially true at the scene of a serious or fatal accident. Law enforcement personnel are actively investigating a fatal or serious accident scene. Other personnel are attending to the people who may be injured and their physical conditions. There's a statutory duty to remain at the scene. And the court said, quote, thus, by the very nature of the circumstances in which drivers find themselves, the legislature has imposed testing only when a driver's expectation of privacy has been diminished and a test is minimally intrusive. Your Honors, here the state, quote, imposed testing, meaning that it told Mr. McElwain that he must submit to the test or have his license suspended. It is a unitary statutory scheme. It was imposed. And because the state imposed testing and Mr. McElwain refused, his license was suspended for three years. Now, the Secretary understandably wants to avoid certain facts and legal issues in this case. And its proffered interpretation of the doctrine of unconstitutional conditions is an expedient, albeit insufficient, analysis that allows it to do so. In short, the Secretary seeks to use the unconstitutional conditions doctrine as a sword to validate warrantless evidence gathering. Now, I'll return to the doctrine, but here are the questions that are left unanswered by the Secretary, which he contends don't matter in this case, but upon which we contend this case hinges. First is, given that the special needs beyond those of ordinary law enforcement, enumerated in Fink v. Ryan, are critical to the constitutionality of the non-DUI consent statute and its application to motorists in Illinois, how can the refusal of a warrantless search of body fluids in circumstances where these special needs are completely absent, how can this be constitutionally permissible? How can it be a permissible basis to suspend Mr. McElwain's license? We note also that the Secretary avoids the question of how and why Mr. McElwain had any reduced expectation of privacy two days later in a voluntary interview at a police station, or what circumstance made this highly invasive search minimally intrusive. Nor does the Secretary offer any other need beyond the needs of ordinary law enforcement that would justify the requested warrantless blood draw. In sum, the Secretary has chosen to opt out of all constitutional analysis in favor of what we consider to be a misapplication of the doctrine of unconstitutional conditions. The other fundamental question left unanswered is why, especially in light of the Secretary's repeated claim that probable cause existed, or at least reasonable suspicion existed, as of the date of the accident, in the form of a bagnet with rolling papers and a residue that appeared, although it was never tested, to be marijuana, why no warrant was obtained? It certainly wasn't for lack of time. One day after the accident, a single witness was interviewed. Admittedly, this witness added no new avenues for investigation to urgently take up the officer's time. In light of the U.S. Supreme Court's ruling in Missouri v. McNeely, which the Secretary of State relies on, in light of the ruling there that, even in light of the state's compelling interest in highway safety, there is no per se exigency justifying a warrantless blood draw, and that if the circumstances allow, the general rule should apply. Police should get a warrant. There is simply no basis to justify the imposition of the statutory scheme. The Secretary apparently wants two different sets of standards for a single statutory scheme. One to apply when testing occurs, and a different one when testing is refused. And the latter one, according to the Secretary, permits the state to suspend a license when a driver refuses a warrantless demand for bodily fluids, even if the demand is not justified by any special needs, but is simply a demand made for mere evidence gathering. Our position is that this is an unreasonable extension of the implied consent scheme, which causes it to create an unconstitutional condition in this case. Now, the Secretary wants to take us away from all of this warrant and constitutional analysis, because they say no chemical test, no blood draw was ever actually done. Mr. McElwain refused the test, so no harm, no foul. The state argues that when, as here, the search was refused, that an incentive, and here, I guess the incentive would be characterized as Mr. McElwain's ability not to have his license suspended for three years. The Secretary says this is not an unconstitutional condition if its impact on a constitutional right is germane to the government's legitimate objectives. And that's a quote from their brief, reply brief at 10, opening brief at 20. I have to note here, because Mr. Burless said repeatedly that the Circuit Court did not focus on the issue of unconstitutional conditions, that's likely because the Secretary did not raise this argument at all below. That's why the judge didn't consider it. Now, I'd also like to point out that the non-DUI consent statute on its face says nothing about the supposed germaneness requirement for the imposition of the suspension half of the statutory scheme. So this should remove any lingering doubt that the Secretary's argument is based purely on the text of the statute. The Secretary takes us to task for reading things into the statute, reading limitations into the statute to render its application constitutional. Obviously, it is perfectly appropriate to construe reasonable limits on the use of the statutory scheme, as the Circuit Court suggests to be done in this case. As to the substance of their argument, the germaneness test is met, according to the Secretary, because subjecting McElwain to a chemical test might yield evidence relevant to its investigation of the accident. If that sounds like ordinary evidence gathering, that's because it is. We do not believe there is anything in any case law, and the Secretary has pointed to none, construing this unconstitutional conditions doctrine to facilitate ordinary law enforcement functions. Looking for evidence of a crime by incentivizing the relinquishment of Fourth Amendment protection against otherwise impermissible searches. We don't have any case law that authorizes this. The use of the unconstitutional conditions doctrine as another weapon in the state's arsenal to collect evidence of a crime without a warrant has no legitimate basis. As Judge Posner pointed out in Burgess v. Lowery, the doctrine is generally used to invalidate state action. To the extent it's applicable to this case, it's fair to say that, overall, Illinois' implied consent statutory scheme, if applied reasonably in light of the Fink decision, does not run afoul of the doctrine. Yes, the state has a legitimate interest in keeping intoxicated drivers off the road. Therefore, it is constitutional to impose the statutory suspension based on a refusal of a warrantless search, assuming the circumstances that render the statutory scheme constitutional exist. To accept the Secretary's argument would mean that the fact that someone once in the distant past drove a motor vehicle, subjects them to this warrantless search under penalty of suspension anytime and anywhere as long as evidence relevant to the investigation of fault and responsibility for the accident may be obtained. Now, even assuming the Secretary's germaneness test were applicable, in order to pass Fourth Amendment muster, it would have to be germane to a legitimate state's interest other than ordinary evidence gathering. But he never tells us how. Two days later, when Mr. McElwain is not on the highway, how the warrantless test serves to keep intoxicated drivers off the road. The Secretary completely ignores, understandably, the evidence of record, which was that Mr. McElwain was affirmatively found to have been not impaired at the scene. We made this very clear in our brief. The testimony of the officer is very, very clear. This officer was experienced in determining driver intoxication and found that he was unimpaired by any substance. How are we making the road safer here? How does the special means exception apply in that situation? According to the state, as long as the search might yield evidence relevant to their investigation, there is a sufficient nexus to the legitimate goal of keeping the highways safe. Well, that test, frankly, would permit a virtually limitless use of the warrantless search under the Applied Consent Scheme. It begs the question of the reasonableness of a warrantless search under the facts of this case. Now, there may be close cases where, for example, there's an explanation for the police not obtaining a warrant, or where evidence suggests that the driver was intoxicated at the scene. This isn't one of those cases. If the court finds no warrant is needed to punish noncompliance with an intrusive search in this case, it is effectively saying that there is an unlimited amount of time and distance from the scene of an accident during which the police can use the Implied Consent Scheme to undertake ordinary law enforcement action, evidence gathering, without a warrant. Now, there are other mistakes in the Secretary's exposition of this doctrine of unconstitutional conditions. Contrary to the Secretary's argument, the fact that a person can avoid the unconstitutional action by refusing to participate in the benefit, in other words, refuse the search in this case, give up your license, that's not relevant, and that doesn't render the scheme entirely constitutional, regardless of the circumstances. In Kuntz v. St. John's River Water Management, which the Secretary referred to earlier and cited in his brief, the Supreme Court made clear exactly this point. The Supreme Court noted that the Florida Supreme Court puzzled over how the government's demand for property can violate the Takings Clause even though no property of any kind was ever taken. But the Court said the unconstitutional conditions doctrine provides a ready answer. Extortionate demands for property in the land use permitting context run afoul of the Takings Clause, not because they take property, but because they impermissibly burden the right not to have property taken without compensation. And here's a quote from Kuntz. As in other unconstitutional conditions cases in which someone refuses to cede a constitutional right in the face of coercive pressure, the impermissible denial of a governmental benefit is a constitutionally cognizable injury. Therefore, Your Honors, it is not a cure for this unreasonable use of the implied consent scheme to say, as the Secretary does repeatedly, that Mr. McElwain had the right to opt out. He could simply refuse the test and give up his right to drive for three years. There's a second flaw in the Secretary's exposition of the unconstitutional conditions doctrine. In the Fourth Amendment context, an optional search, i.e. one which can be avoided by giving up a benefit, still requires the tailoring of that search to meet special needs, not ordinary law enforcement needs. Burgess v. Lowry, again, Seventh Circuit, inciting what would be a reasonable condition imposed on Fourth Amendment rights. The Court refers to the search of airline passengers through a metal detector before boarding an airplane. Well, obviously, the special need here is airline safety. The intent of this procedure is not to gather evidence of a crime. Another case cited by the Secretary in the Fourth Amendment context, Gilmore v. Gonzalez, also involves a special needs analysis, screening passengers boarding planes. In that case, the Court said, to meet the test of reasonableness an administrative screening search must be as limited in its intrusiveness as is consistent with satisfaction of the administrative need that justifies it. The Secretary's germaneness argument takes this case out of the special needs arena. The warrantless search here was, as the Secretary acknowledges, germane only to gather facts for an accident investigation. It was not tailored to the State's interest in keeping intoxicated drivers off the road. Mr. McElwain was not at the roadside, and when he was, he was determined not to have been impaired. For all these reasons, we believe the Circuit Court correctly ruled that applying the implied consent statutory scheme to deprive Mr. McElwain of his license under these facts was an unconstitutional application of the statute. Thank you. The plaintiff's argument continues to conflate the Fourth Amendment analysis with the unconstitutional conditions analysis. And to hold that the two are one and the same fundamentally asks this court to reverse decades of U.S. Supreme Court precedent saying the two tests are not exactly the same. Now, the plaintiff relies upon and mentions the Burgess decision out of the Seventh Circuit which we identified in our brief. I think it's critical to note that in Burgess, the court was attempting to draw a line as to the rough proportionality component of the Dolan standard regarding unconstitutional conditions. Specifically, the court there said it would not be proportional, it would not be reasonable to impose strip search requirements for every single person that wished to visit any inmate in an Illinois prison. It did note, however, that it would be reasonable to condition ordinary searches, metal detectors, less invasive searches for people visiting prisoners, and it also said there is probably a strong argument that if this strip search rule applied only to death row inmates, that in that circumstance it may well be a proportional burden given the desperation of people who are on death row. So it seems to me that ultimately Burgess stands for the proposition that this is an area of law in which you are drawing lines, and the line is not simply whether or not the government has burdened the exercise of a constitutional right to even the slightest degree. As for the Kuntz decision, I think it's important to note the language that the plaintiff identified here during his presentation. And the critical language there was that the government cannot use coercive pressure to get someone to surrender their constitutional rights. That's exactly what we're saying. We're just saying that we're not applying coercive pressure here, something that is so substantial as to overwhelm the will. And I think we can say that with a great deal of confidence because the U.S. Supreme Court, in upholding this very type of statutory regime over and over and over again, has emphasized that you could not argue that consent given to a search in the context of a threat that you will lose your driver's license if you don't would overwhelm your will and make the search functionally involuntary for purposes of the exclusionary rule under the Fourth Amendment. So again, the test cannot be the one that the plaintiff is advocating for. And I think that's particularly critical to note in light of the Supreme Court's recent decision in the McNeely case. In McNeely, the U.S. Supreme Court said that under the Fourth Amendment's warrant requirement, you have to get a warrant if you have the opportunity, sufficient time to get the warrant if you want to conduct an involuntary search against someone's will. Well, the problem with that is that now, as the Court pointed out in McNeely, in the age of cellular telephones, advanced communication, that will apply in almost every single case. If the McNeely rule is the one that governs when this sort of statutory regime can be constitutionally applied, it would functionally invalidate a large number  as a result. So if anyone is asking for an overbroad rule, it would be the plaintiff here. And I'd emphasize that in McNeely, the Court, in identifying this rule regarding the warrant requirement, says even if you can't conduct the search, states still have a valid and powerful tool at their disposal, what it describes as a legal tool. And that is the ability to suspend a driver's license based upon the lack of consent. So even the McNeely case itself does not envision that the test for whether or not you need a warrant under the Fourth Amendment will be exactly coextensive with the unconstitutional conditions doctrine. Now, certainly, a number of cases for a number of years have proceeded on the pre-McNeely rule, which is that because the body is metabolizing evidence as you go on, that an involuntary search is almost always going to be constitutionally permissible. McNeely fundamentally changes that, and that's why we have to resort to the constitutional conditions doctrine. But it's a powerful doctrine indeed. It is one that has been recognized to be able to overcome basic First Amendment protections, coarse political speech. It has been one that has been recognized to apply in the context of takings clause cases. So it is not as though this is a completely novel concept, and it has applied in numerous contexts for a number of years. I'd also add that the United States Supreme Court has, in a number of different circumstances, says it is reasonable to condition a government benefit on something based on a search in a context that looks very much like the unconstitutional conditions doctrine. In the Vernonia School District case in particular, the court said it is constitutionally permissible to condition participation in interscholastic athletics on an agreement to allow warrantless, suspicionless, involuntary chemical tests. That case was later expanded in the Earls case several years later to apply to all after-school activities. The Skinner case that we referenced in our brief said it's perfectly valid to require that someone undergo a chemical test if they are a conductor of a train and involved in an accident as a condition for their continued employment as the conductor of a train. And in the Von Raab case that we cited in our brief, the court said it is perfectly reasonable to condition your position as a customs official, because you carry a firearm, on your agreement to random drug testing. Mr. Berlow, forgive me for interrupting, but I've been thinking about what you argued about McNeely, and I want to make sure I understand your argument. I thought McNeely specifically said, absent exigent circumstances, there's no justification to depart from the warrant requirement. I mean, I got a direct quote on that. And, Justice Kilbrey, that's absolutely right when it comes to trying to conduct a suspicionless search. There was no search conducted here, and the Fourth Amendment is not violated by a search that never took place. The question here is whether you can attach a consequence to the refusal to give the consent to search, and that has to do with, I think, the degree of coerciveness. It has to do with the degree to which the proportionality test that I referred to, I think the coerciveness element is part of that test. But ultimately, the test is not simply whether or not the Fourth Amendment would demand the warrant if you want to conduct the test against someone's will. The two cannot be one and the same. If it is, then McNeely has thrown this implied consent regime into complete flux in a way that the court specifically said it wasn't doing. But your initial response was distinguishing on, you said, suspicionless. Is the suspicion here pretty low when the officer determined that he was not impaired at the time of the accident and let him leave the scene? I don't think so, Justice Kilbrey. And the reason is that subsequent to the incident, the accident, they discovered evidence of drug paraphernalia in his car. And so while he might not have appeared to be intoxicated at the time of the accident, it is entirely possible that he was under the influence at the time. So I don't think this is a suspicionless search. The other thing I'll add here is that to some extent the plaintiff's argument proves too much. If all of the factors indicate that they could have obtained a warrant, that would seem to make this a more proportional intrusion in the context of a Fourth Amendment search for purposes of the unconstitutional conditions doctrine. So it does seem to me that all of the factors that would have allowed for a warrant make this a reasonable search, to use the language of the Seventh Circuit, or a proportional search that was at least contemplated for purposes of the unconstitutional conditions doctrine. Ultimately, the question that the court is confronted with here, I think, is whether or not the threat of losing a driver's license is simply so onerous that it overwhelms the plaintiff's will and that it is disproportionately intrusive in light of the government's interest in protecting the public from intoxicated drivers. The interest here is not pure evidence gathering. The interest here is to protect the public from someone that right now the Illinois Secretary of State can't certify as someone who doesn't threaten the lives of everybody else who is on the road with him. The reason for this requirement is that the Secretary needs to be able to say that people who are licensed to drive in Illinois are safe for you to share the road with. Under these circumstances, where the litigant has been involved in a fatal accident, a woman lost her life as a result of this, and was arrested for a moving violation that caused that accident, it seems to me that you can't say that someone who refuses to undergo a chemical test is someone who is safe to share the road with. Any other result would seem to me to needlessly threaten public safety in a way that the Constitution simply does not mandate. Is there any, if we accept your view, is there any limitation on when the request could be made? Chief Justice Garmon, I think the answer to that question is yes, and it's going to depend upon the individual facts of a particular case. I think the time limitation element here was really only extended because we were dealing with marijuana, which will turn up in a chemical test several days after its usage. Again, as I think I said in my opening presentation, if we were dealing with a bottle of whiskey that had been discovered in the car, we would not be making this argument. We would absolutely concede that in that circumstance, it is just a pure fishing expedition. But here, the chemical test, because of the nature of the narcotic that was suspected of being used here, we think that in that circumstance, we have far more of that direct connection to the government's interest, and that is what makes this a proportional response in light of the profoundly important government interest at issue here. Thank you. Thank you, Your Honor. Case number 117170, Kevin McElwain v. The Office of the Secretary of State, will be taken under advisement as agenda number 10. Mr. Berlow and Mr. Shubar, thank you very much for your arguments this morning. You're excused at this time.